**UNITED STATES of America**

**v.**

**Jason ARZBERGER, Defendant.**

**Nos. 08 Cr. 894 (AKH), 08 Mag. 1876 (JCF).**

United States District Court, S.D. New York.

Dec. 31, 2008.

Amie Nicole Ely, U.S. Attorney's Office, New York, NY, for Plaintiff.

Leonard Fessenden Joy, Federal Defenders of New York Inc., New York, NY, for Defendant.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

Jason Arzberger is charged with possessing and receiving child pornography. After Mr. Arzberger was released on bond pending trial, the Government moved to modify his bail by adding conditions required by the Adam Walsh Amendments to the Bail Reform Act. *See* 18 U.S.C. § 3142 *et seq.*, as amended by Adam Walsh Child Protection and Safety Act of 2006, H.R. 4472, Pub. L. No. 109–248 (the "Adam Walsh Amendments"). In particular, the Government requested that the defendant (1) be required to comply with a curfew, (2) be subject to electronic monitoring, (3) be directed to avoid contact with any potential witnesses who may testify regarding his offense, and (4) be prohibited from possessing a firearm, destructive device, or other dangerous weapon.

Mr. Arzberger has opposed the Government's application on the grounds that the Adam Walsh Amendments are unconstitutional because they (1) violate due process under the Fifth Amendment, (2) violate

the Eighth Amendment proscription against excessive bail, and (3) violate the separation of powers doctrine. For the reasons that follow, the Government's motion is denied.

*Background*

In the course of an international criminal investigation, Europol identified a producer of child pornography in Italy (the "Producer"), who sold photographs and movies through a website with the internet address youngvideomodels.net. (Criminal Complaint § "Compl."), ¶¶ 4(a), (g). In the course of a search of the Producer's residence, Europol seized approximately 150 videotapes and numerous e-mail addresses which it provided to the Federal Bureau of Investigation (the "FBI"). (Compl., ¶¶ 4(d), (e), (f)). The FBI reviewed the videos and determined that they all depicted females under the age of 15, and Europol identified many of the minors and verified their ages. (Compl., ¶ 4(f)). In nearly all of the videos, the minors appear nude or partially nude, are engaging in sexual acts, or are depicted in lascivious positions. (Compl., ¶ 4(f)).

One of the e-mail addresses obtained by the FBI was that of the defendant, Jason Arzberger. (Compl., ¶¶ 4(g), 6). Mr. Arzberger had communicated with the Producer seven times between September 2005 and March 2006, inquiring about and requesting movies containing child pornography. (Compl., ¶ 5). In December 2007, an undercover FBI agent (the "Undercover Agent"), posing as an associate of the Producer, sent an e-mail to the defendant offering new pornographic DVDs. (Compl., ¶ 7(a)). When Mr. Arzberger responded by requesting details, the Undercover Agent provided a catalogue of three sets of videos depicting a 10–year–old, a 12–year–old, and a 14–year–old engaged in sexual acts. (Compl., ¶ 7(c)). The Undercover

Agent also provided an order form. (Compl., ¶ 7(c)).

Mr. Arzberger returned the order form, requesting specific DVDs that depicted the 12 year old and 14 year old girls engaging in sexual activities. (Compl., ¶¶ 7(c), 8(c)). On August 27, 2008, an undercover letter carrier delivered to the defendant a package that appeared to be from the Producer's associate in response to Mr. Arzberger's order. (Government's Memorandum of Law Regarding the Constitutionality of the Adam Walsh Act Bail Conditions ("Gov't Memo.") at 3). When the defendant identified himself and accepted the package, he was arrested. (Gov't Memo. at 3–4). He made a post-arrest statement acknowledging his conduct. (Gov't Memo. at 4).

Mr. Arzberger was charged in a criminal complaint with one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(b)(B) and with one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B). He was subsequently indicted on the same charges.

The defendant appeared before me on August 27, 2008, the same day he was arrested. I ordered that he be released on a bail package that included an agreed-upon bond of $100,000.00, secured by $10,000.00 in cash and co-signed by two financially responsible persons. (Transcript of Criminal Cause for Presentment and Bail Hearing dated Aug. 27, 2008 ("Tr.") at 4, 6). As additional conditions of release, I also required that Mr. Arzberger be subject to strict pretrial services supervision including drug testing and treatment, that he undergo a mental health evaluation by an independent provider as well as treatment if recommended, that he have no unsupervised contact with minors, that he permit the Pretrial Services Office to monitor his computer use, and that he limit his travel to the Southern and East-

ern Districts of New York. (Tr. at 6–7). I declined to require electronic monitoring. (Tr. at 6).

On August 29, 2008, the Government notified me that certain additional conditions were required by 18 U.S.C. § 3142(c)(1)(B) and asked that I modify the terms of the defendant's release accordingly. (Letter of Amie N. Ely dated Aug. 29, 2008). Specifically, the Government requested the conditions referred to above: a curfew, electronic monitoring, a prohibition on contact with potential witnesses, and a prohibition on possessing a firearm or other dangerous weapon. Defense counsel responded on September 2, 2008, contending that the requirements imposed by the Adam Walsh Amendments were unconstitutional. (Letter of Leonard F. Joy dated Sept. 2, 2008). Both parties have subsequently briefed those issues.

*Discussion*

### A. *The Legal Landscape*

#### 1. *The Statutory Scheme*

Under the Bail Reform Act of 1984, an accused person may be held without bail pending trial upon a judicial determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Where the issue is the safety of the community, the burden is on the Government to demonstrate by clear and convincing evidence that the defendant poses a danger. 18 U.S.C. § 3142(f)(2). In cases involving crimes of violence, including crimes against minor victims such as receipt or distribution of child pornography, there is a rebuttable presumption that the defendant presents a danger to the community. 18 U.S.C. § 3142(e). And, while the Government retains its burden of proving dangerousness by clear and convincing evidence,

the presumption continues to carry weight even when the defendant comes forth with rebuttal evidence. *See United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir.1991).

If a defendant is not remanded, he must be released on personal recognizance or on an unsecured bond unless the court determines that these conditions are insufficient. 18 U.S.C. § 3142(b). In that event, the court is obligated to fashion a bail package consisting of "the least restrictive further condition or conditions" that will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B).

In 2006, Congress enacted the Adam Walsh Amendments, which, among other things, mandated specific conditions for the release of persons charged with child pornography offenses. Now, "[i]n any case that involves a minor victim under section ... 2252A(a)(2) ... of this title, any order shall contain, at a minimum, a condition of electronic monitoring" and the conditions that the defendant:

[1] abide by specified restrictions on personal associations, place of abode, or travel;

[2] avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

[3] report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

[4] comply with a specified curfew; [and]

[5] refrain from possessing a firearm, destructive device, or other dangerous weapon[.]

18 U.S.C. § 3142(c)(1)(B). It is the nondiscretionary imposition of these conditions that Mr. Arzberger challenges.

## 2. *The Case Law*

Four cases have considered the constitutionality of the Adam Walsh Amendments. The first was *United States v. Crowell,* Nos. 06–M–1095, 06–CR–291, 06–CR–304, 2006 WL 3541736 (W.D.N.Y. Dec. 7, 2006). In that case, three defendants were released on conditions that were recommended by the Pretrial Services Office and unopposed by the Government. *Id.* at *1–2. Sometime after the defendants' release, Pretrial Services recognized that it had not sought certain terms mandated by the Adam Walsh Amendments and recommended that the conditions of release be modified accordingly for each defendant. *Id.* at *2. Defense counsel objected on the ground that the Amendments were unconstitutional, and the Government submitted papers opposing the defendants' position, which the court construed as a motion for imposition of the additional conditions recommended by Pretrial Services. *Id.* at *2–3.

United States Magistrate Judge Leslie G. Foschio first considered the Eighth Amendment's prohibition on excessive bail. He reasoned that the appropriate mode of analysis was to "compare [the] proposed conditions with the interests the government seeks to protect, including assuring the defendant's appearance at trial and protecting the safety of the community." *Id.* at *5 (citation omitted). Judge Foschio reached the following conclusion:

> Although the additional conditions sought to be required would further advance the public's valid interest in protecting children from sexual abuse and exploitation through the production or possession of such pornography and, as such, are not *per se* violative of the Eighth Amendment's prohibition against excessive bail, the imposition of such conditions on all defendants charged with certain crimes, regardless of the personal characteristics of each defendant and circumstances of the offense, without any consideration of factors demonstrating that those same legitimate objectives cannot be achieved with less onerous release conditions, will subject a defendant, for whom such conditions are, in the court's judgment, unnecessary, to excessive bail in violation of the Eighth Amendment.

*Id.* at *7.

Next, Judge Foschio considered the defendants' argument that the Adam Walsh Amendments violated procedural due process. He identified the private interest at stake as "the defendants' interest, protected by the Eighth Amendment, in remaining at liberty prior to trial." *Id.* at *8. He concluded that

> the Amendments, by mandating the imposition of certain pretrial release conditions, establish that an arrest on the stated criminal charges, without more, irrebuttably establishes that such conditions are required, thereby eliminating an accused's right to an independent judicial determination as to required release conditions, in violation of the right to procedural due process applicable to the instant proceedings under the Fifth Amendment.

*Id.* at *10.

Finally, Judge Foschio determined that the Amendments violate the separation of powers doctrine. He characterized that doctrine as precluding Congress from prescribing "a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently." *Id.* at *11 (citation omitted). Applying this principle, he concluded that

> by enacting the Adam Walsh Amendments, Congress has unambiguously imposed upon the federal judiciary a specific rule to be applied in determining the release of a defendant charged with

specified offenses, thereby denying to the court the exercise of its judicial authority to set such conditions. In so doing, Congress has commandeered the court into acting as its agent for purposes of imposing the targeted release conditions.

*Id.*

The second case to consider the constitutionality of the Amendments was *United States v. Vujnovich,* No. 07–20126–01, 2007 WL 4125901 (D.Kan. Nov. 20, 2007). In that case, the defendant moved for modification of his release conditions by removal of the requirement of electronic monitoring that had been imposed pursuant to the Amendments. *Id.* at *1. Magistrate Judge David J. Waxse granted the motion and adopted the legal conclusions set forth in *Crowell* in their entirety, finding that the Amendments violate the Fifth Amendment right to due process, the separation of powers doctrine, and the Excessive Bail Clause of the Eighth Amendment. *Id.* at *2–3. When the Government appealed that determination, United States District Judge Carlos Murgia affirmed on the basis of the due process analysis alone. *United States v. Vujnovich,* No. 07–20126–01, 2008 WL 687203, at *2 (D.Kan. March 11, 2008). He determined that "the application of the Adam Walsh Amendments in this case eliminated an independent judicial determination as to the necessity of the release conditions. This violated defendant's right to procedural due process." *Id.* at *3.

The next case to address the Amendments was *United States v. Gardner,* 523 F.Supp.2d 1025 (N.D.Cal.2007). There, the defendant had been released on conditions that included a curfew, and the Government moved to modify bail to add a requirement for electronic monitoring as mandated by the Amendments. *Id.* at 1026–27. The defendant opposed the mo-

tion on the basis that the Amendments were unconstitutional. *Id.* at 1027–28.

Magistrate Judge Edward M. Chen first addressed the Excessive Bail Clause. Treating that constitutional provision as applicable to conditions of release, he sought to determine whether the additional condition requested by the Government was excessive in light of valid governmental interests. *Id.* at 1029. First, although the absence of express legislative findings or evidence supporting the imposition of the Adam Walsh bail conditions might "speak to the strength of the government's interest," Judge Chen nevertheless found that the Government had a valid interest in preventing additional crimes by arrestees. *Id.* at 1030 & n. 2. Then he determined that the requested condition in that case—electronic monitoring—merely changed the manner in which the defendant's curfew was enforced; it did not change the substantive restrictions on her liberty. *Id.* at 1030. Thus, the court rejected the proposition that "the singular addition of electronic monitoring in this instance is 'excessive' in light of the government's valid interest [in] obtaining an additional safeguard against the risk of post-arrest criminal activity." *Id.* at 1031. Finally, Judge Chen declined to adopt the reasoning in Crowell that the Excessive Bail Clause requires release on the "least restrictive" conditions. *Id.* at 1031.

Judge Chen next found that the condition at issue did not violate procedural due process. He followed the traditional two-step due process analysis, asking first whether there was a constitutionally protected liberty or property interest and then whether adequate procedures were afforded prior to the deprivation of that interest. *Id.* at 1032. Addressing the first prong, Judge Chen again emphasized that "here what is at issue is the singular condition of electronic monitoring to en-

force an already imposed curfew." *Id.* He noted that while the Bail Reform Act had circumscribed the use of electronic monitoring, and while the Adam Walsh Amendments mandated this condition, "procedural due process does not prevent Congress from taking away what it previously conferred." *Id.* at 1033. Therefore, there was no legislatively created liberty interest to be free from electronic monitoring. *Id.* Nor, according to Judge Chen, did any such liberty interest arise directly from any constitutional provision. *Id.* at 1033–35. In the absence of a protectible interest, then, there could be no due process violation. In this respect, Judge Chen found *Crowell* inapposite because additional conditions had been at issue there:

> *Crowell* is distinguishable because the application of the Adam Walsh Act there required the imposition not only of electronic monitoring but also a curfew. The incremental effect of the Act in *Crowell* was significantly more substantial and substantive than in the case at bar. *Crowell* did not analyze the threshold procedural due process question whether there is a deprivation of a cognizable liberty interest. Given the effect of a curfew on substantive freedom, a strong case would be made that the application of the Adam Walsh Act worked a deprivation of liberty in that case. No such conclusion obtains here.

*Id.* at 1034.

Finally, Judge Chen rejected the argument that the Amendments violate the separation of powers doctrine. He noted that the statute did not fall into any of the categories of legislative enactments that the Supreme Court had found to transgress the doctrine. *Id.* at 1035. He also declined to follow the suggestion in *Crowell* that the setting of conditions for bail is virtually the exclusive prerogative of the judicial branch. Rather, he noted that "although the right against excessive bail is constitutionally protected, and the enforcement of this right rests primarily with the courts, Congress has long had a substantial hand in shaping the bail process." *Id.* at 1035–36. Accordingly, Judge Chen granted the Government's motion and imposed electronic monitoring.

The most recent case to consider the Amendments is *United States v. Torres,* 566 F.Supp.2d 591 (W.D.Tex.2008). There, a magistrate judge initially released the defendant on conditions that included a curfew and electronic monitoring, but then removed these conditions on the defendant's motion, finding that their automatic imposition pursuant to the Adam Walsh Amendments was unconstitutional. *Id.* at 593–94. On appeal, United States District Judge Kathleen Cardone determined that the Amendments violated Fifth Amendment due process on their face and violated the Excessive Bail Clause as applied to the defendant before her. *Id.* at 596, 599, 601–02. In light of these rulings, she did not reach the separation of powers argument. *Id.* at 602.

As Judge Chen did, Judge Cardone utilized the two-step due process analysis. *Id.* at 596–97. However, she determined that "[t]he mandatory curfew of the Adam Walsh Amendments implicates a liberty interest by curtailing an individual's ability to move from one place to another and to remain in a place of choice." *Id.* at 597 (citation omitted). Having come to that conclusion, she then considered whether the process provided was sufficient, applying the balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to weigh "(1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private action and the probable value, if any, that additional procedural protections would provide, and

(3) the interest that the government seeks to achieve." *Torres*, 566 F.Supp.2d at 597 (citation omitted). Analyzing each factor, Judge Cardone first determined that the private interest in freedom of movement is significant. *Id.* Next, she found that in the absence of any individualized determination of risk of flight or danger to the community, there was a serious risk that a defendant would be erroneously deprived of his liberty, a risk that would be mitigated by providing the procedural protections that generally attend bail determinations. *Id.* at 597–98. Finally, Judge Cardone found that the important interest in ensuring the safety of the community and of children in particular could be furthered without removing judicial discretion over the imposition of a curfew and electronic monitoring. *Id.* at 598. Because the absence of procedural protections applies to all defendants charged with specified crimes and because there is no rationale that would justify denying any defendant those protections, Judge Cardone found that the Adam Walsh Amendments violate due process on their face. *Id.* at 598–99.

Next, Judge Cardone rejected the defendant's facial challenge to the Amendments under the Excessive Bail Clause, finding that "there are circumstances when a court would determine that these conditions of release are not 'excessive' in light of the perceived evil and would impose those conditions of release upon an accused[.]" *Id.* at 601. However, she also concluded that the Amendments were unconstitutional as applied in that case because the mandated conditions were "more stringent than what is required to achieve the Government's objectives" with respect to the accused. *Id.* at 601–02. As a result, she affirmed the magistrate judge's determination and declined to impose a curfew and electronic monitoring. *Id.* at 602.

### 3. Constitutional Challenges: Facial and As–Applied

A threshold question in any case challenging the constitutionality of legislation is whether the attack is directed to the validity of the statute on its face or only as applied to the particular circumstances of the litigant bringing the challenge. This distinction is important in two respects. First, it has implications for the future enforcibility of the statute: "[i]f a court holds a statute unconstitutional on its face, the state may not enforce it under any circumstances, unless an appropriate court narrows its application; in contrast, when a court holds a statute unconstitutional as applied to particular facts, the state may enforce the statute in different circumstances." Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 236 (1994). Second, the nature of the constitutional challenge determines the burden that the challenger must satisfy. In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court observed that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* at 745, 107 S.Ct. 2095. To be sure, the *Salerno* standard has met with criticism both in the Supreme Court and elsewhere. *See Washington State Grange v. Washington State Republican Party*, —— U.S. ——, ——, 128 S.Ct. 1184, 1190 & n. 6, 170 L.Ed.2d 151 (2008) (acknowledging that "some Members of the Court have criticized the *Salerno* formulation"); *Washington v. Glucksberg*, 521 U.S. 702, 739–40 & n. 7, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring) (noting that "[t]he appropriate standard to be applied in cases making facial challenges to state statutes has been the subject of debate within this Court," and

arguing that the Court had never applied the strict *Salerno* standard, even in *Salerno* itself); *Torres,* 566 F.Supp.2d at 595–96 & n. 1 (describing debate concerning appropriate standard); Dorf at 239–40.[1] It remains, however, the basis for evaluating facial constitutional challenges in the Second Circuit. *See Diaz v. Paterson,* 547 F.3d 88, 101 (2d Cir.2008); *National Abortion Federation v. Gonzales,* 437 F.3d 278, 293–94 (2d Cir.2006), *vacated on other grounds,* 224 Fed.Appx. 88 (2d Cir.2007); *Bach v. Pataki,* 408 F.3d 75, 89 (2d Cir. 2005).

In this case, Mr. Arzberger does not explicitly categorize his assault on the Adam Walsh Amendments as a facial or as an as-applied challenge. At times, he cites cases that utilized the *Salerno* standard and found the Amendments unconstitutional on their face. (Defendant's Memorandum of Law in Opposition to the Government's Request for Imposition of the Conditions of Pretrial Release Required by the Adam Walsh Amendments to the Bail Reform Act of 1984 ("Def. Memo.") at 16). At other times, he distinguishes decisions based on the specific facts of his case, implying that he intends an as-ap-

plied challenge. (Def. Memo. at 8–9).[2] Given this ambiguity, it is appropriate to analyze each constitutional argument first on a facial basis and then, if necessary, as applied to Mr. Arzberger. ·

### B. *Due Process*

■ The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. V. Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [Government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted); *see Ford Motor Credit Co. v. NYC Police Department,* 503 F.3d 186, 190 (2d Cir.2007); *Kapps v. Wing,* 404 F.3d 105, 112 (2d Cir.2005). In this case, each condition of release mandated by the Adam Walsh Amendments may implicate different liberty or property

---

1. Professor Dorf offers the following criticism of the *Salerno* standard:

   While a statute that "might operate unconstitutionally under some conceivable set of circumstances" could be facially valid, it hardly follows, as the Court implies, that a statute with a large number of obviously unconstitutional applications should be facially valid merely because there exists some set of circumstances, no matter how small or insignificant, under which the statute can be applied without violating a constitutional guarantee. A wide gulf separates the statute that might operate unconstitutionally under some conceivable set of circumstances from one that operates unconstitutionally under all circumstances. The Court in *Salerno* does not explain why its rejection of the very low threshold necessitates adoption of the very high one. Yet this leap affects a broad middle range

   of statutes, which are unconstitutional in a substantial number of applications but constitutional in a substantial number of others. Under *Salerno,* courts must hold this broad middle range of statutes facially valid simply because statutes in a different category—those that potentially have unconstitutional applications in a very limited set of circumstances—are also facially valid.

   Dorf at 740.

2. Furthermore, in light of the differing standards for adjudicating the constitutionality of a statute, it would be irrational for a litigant to mount the more difficult facial challenge while not also attacking the legislation as applied in his circumstances. *See Bach,* 408 F.3d at 94 (finding failure to prevail on as-applied challenge fatal to facial challenge as well).

interests, so it is necessary to consider individually each condition requested by the Government.

### 1. Curfew with Electronic Monitoring

■ "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). A liberty interest may also be created by statute under some circumstances. *Id.* at 222, 125 S.Ct. 2384. Here, the curfew requested by the Government would place restrictions on Mr. Arzberger's ability to move about at will. Yet, the Second Circuit recognizes "[t]he right to intrastate travel," also called "the right to free movement." *Ramos v. Town of Vernon,* 353 F.3d 171, 176 (2d Cir.2003) (citing *King v. New Rochelle Municipal Housing Authority,* 442 F.2d 646, 648 (2d Cir. 1971)); *see Albright v. Oliver,* 510 U.S. 266, 278, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (finding "unquestioned right to travel" restricted by conditions of release) (Ginsburg, J., concurring); *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990) (noting that Second Circuit had held that "the Constitution ... protects the right to travel freely within a single state"). Indeed, in *Ramos* the court found that this constitutional right to travel triggered strict scrutiny of a curfew that restricted the free movement of juveniles at certain hours, 353 F.3d at 176. Accordingly, the curfew and attendant electronic monitoring here would impinge on a constitutionally-protected liberty interest.[3]

Once a protectible interest has been identified, courts apply the analytical framework established by the Supreme Court in *Mathews v. Eldridge* to ascertain the extent of the procedural protections constitutionally required.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334, 96 S.Ct. 893.

■ Judge Cardone's balancing of these factors in *Torres* is persuasive. First, the private interest at stake is significant. "[A]n individual's right to freedom of movement among locations and the right to remain in a public place are fundamental to our sense of personal liberty protected by the Constitution." *Torres,* 566 F.Supp.2d at 597. Indeed, in *Ramos* the Second Circuit found this interest to be important enough to strike down a curfew that applied only to juveniles. *Ramos,* 353 F.3d at 187.

Second, the risk that a defendant will be erroneously deprived of the right to travel by the Adam Walsh Amendments is substantial. "Without any consideration of the need for the restriction on an arrestee's liberty to ensure his appearance at trial or to ensure the safety of the community, there is a great risk that an arrestee will be deprived of his liberty erroneously." *Torres,* 566 F.Supp.2d at 597–98. Of course, there is no indication of what the

---

**3.** Because in this case the Government requested electronic monitoring in conjunction with its application for a curfew, there is no need to analyze whether a liberty interest would be implicated by the incremental imposition of electronic monitoring only after a curfew had already been ordered. *See Gardner,* 523 F.Supp.2d at 1031–34.

overall "error rate" might be with respect to defendants generally, that is, how many defendants upon whom the Amendments automatically impose a curfew would be relieved of that condition if their specific circumstances were considered. But especially in the absence of any findings by Congress as to the efficacy of a curfew requirement, it cannot be assumed that courts would generally require a curfew for defendants charged with child pornography offenses if such a condition were discretionary rather than mandatory.

The additional procedural safeguards at issue—the opportunity to present evidence at a bail hearing as to a defendant's individual characteristics and the particular circumstances of the offense—would reduce the risk of erroneous deprivation at little cost. Proceedings are already conducted to determine whether a defendant should be detained or released on bail, the amount of bail, and the need for conditions of release other than those required by the Adam Walsh Amendments. The additional burden of requiring an individualized determination of the need for a curfew would be minimal.

Finally, the Government obviously has a significant and legitimate interest in ensuring the safety of the community and specifically in protecting children who may be at risk from those who commit offenses related to child pornography. But that interest is in no way diminished by conducting an individual evaluation of the need for a curfew.

The Adam Walsh Amendments, then, violate the Due Process Clause of the Fifth Amendment to the extent that they require the imposition of a curfew with associated electronic monitoring without providing the defendant any opportunity to contest whether such conditions are necessary to ensure his return to court and the safety of the community. In this respect,

the Amendments are unconstitutional on their face because the absence of procedural protections is universal: no defendant is afforded the opportunity to present particularized evidence to rebut the presumed need to restrict his freedom of movement. The Government's application to impose the condition of a curfew with electronic monitoring is therefore denied.

### 2. *Possession of Firearms*

A year ago, I might well have taken for granted the authority of Congress to require that a person charged with a crime be prohibited from possessing a firearm as a condition of pretrial release. The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. Courts, however, had routinely interpreted the right to bear arms as a right limited to the possession of weapons for certain military purposes. *See United States v. Lippman*, 369 F.3d 1039, 1043–45 (8th Cir.2004); *United States v. Parker*, 362 F.3d 1279, 1282–84 (10th Cir.2004); *Silveira v. Lockyer*, 312 F.3d 1052, 1060–66 (9th Cir.2002); *United States v. Napier*, 233 F.3d 394, 402–04 (6th Cir.2000); *United States v. Scanio*, No. 97–1584, 1998 WL 802060, at *2 (2d Cir. Nov. 12, 1998) (unpublished opinion); *United States v. Wright*, 117 F.3d 1265, 1271–74 (11th Cir.1997); *United States v. Rybar*, 103 F.3d 273, 285–86 (3d Cir.1996); *Thomas v. City Council of Portland*, 730 F.2d 41, 42 (1st Cir.1984); *United States v. Johnson*, 497 F.2d 548, 550 (4th Cir.1974) (per curiam); *United States v. Johnson*, 441 F.2d 1134, 1136 (5th Cir.1971); *but see United States v. Emerson*, 270 F.3d 203, 218–60 (5th Cir.2001) (holding that Second Amendment protects individual right to bear arms). These courts relied on the Supreme Court's decision in *United States*

*v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), holding that

> [i]n the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

*Id.* at 178, 59 S.Ct. 816. Indeed, the Supreme Court itself subsequently cited *Miller* for the principle that "the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to the preservation or efficiency of a well regulated militia.'" *Lewis v. United States*, 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (quoting *Miller*, 307 U.S. at 178, 59 S.Ct. 816).

This all changed with *District of Columbia v. Heller*, —— U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). There, the Court stated that "[t]here seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Id.* at ——, 128 S.Ct. at 2799. It interpreted *Miller* as holding "only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at —— ——, 128 S.Ct. at 2815–16. The Court did acknowledge that "the right secured by the Second Amendment is not unlimited" and noted that

nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at —— ——, 128 S.Ct. at 2816–17 (footnote omitted).

To the extent, then, that the Second Amendment creates an individual right to possess a firearm unrelated to any military purpose, it also establishes a protectible liberty interest. And, although the Supreme Court has indicated that this privilege may be withdrawn from some groups of persons such as convicted felons, there is no basis for categorically depriving persons who are merely accused of certain crimes of the right to legal possession of a firearm.[4]

■ Again, the next step in the analysis is to apply the *Mathews* balancing test. The private interest at stake is paramount: the right to possess a firearm is constitutionally protected. In Heller, the Court made clear that there is no hierarchy of constitutional rights: "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* at ——, 128 S.Ct. at 2821. The remaining *Mathews* factors play out much as they did in the analysis of the curfew requirement. First, there is a serious risk that, in the absence of an individualized determination, an accused person will wrongly be de-

---

**4.** The Second Circuit had previously held that "[t]he Second Amendment's 'right to keep and bear arms' imposes a limitation on only federal, not state, legislative efforts." *Bach*, 408 F.3d at 84 (footnote omitted). This dis-

tinction, even if it survives *Heller*, has no bearing here, since the Adam Walsh Amendments are an exercise of federal congressional authority.

prived of his Second Amendment rights. Indeed, the Government may well find it difficult to articulate a nexus between an accusation of receiving child pornography and the need to prohibit possession of a firearm. Second, providing the defendant with an opportunity to be heard with respect to the appropriateness of this condition would reduce the potential error rate without creating a significant burden. And, finally, the Government's interest in ensuring the safety of the community would not be undermined by requiring an independent judicial determination of the danger caused by the defendant and the efficacy of the proposed bail condition.

Accordingly, the Adam Walsh Amendments violate due process by requiring that, as a condition of release on bail, an accused person be required to surrender his Second Amendment right to possess a firearm without giving that person an opportunity to contest whether such a condition is reasonably necessary in his case to secure the safety of the community. Because the Amendments do not permit an individualized determination, they are unconstitutional on their face. The Government's application to impose as a condition of bail that Mr. Arzberger not possess a firearm is therefore denied.

### 3. Contact with Witnesses

■■ The last condition requested by the Government—an order forbidding Mr. Arzberger from having contact with any witness—implicates the First Amendment right of association. "[O]ne of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means." *National Association for the Advancement of Colored People v. Claiborne Hardware*

*Co.*, 458 U.S. 886, 933, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (footnote omitted).

The most natural privilege of man, next to the right of acting for himself, is that of combining his exertions with that of his fellow creatures and of acting in common with them. The right of association therefore appears to me almost as inalienable in its nature as the right of personal liberty. No legislator can attack it without impairing the foundations of society.

1 Alexis de Toqueville, *Democracy in America* 203 (Phillips Bradley ed. 1954) (quoted in *Claiborne Hardware*, 458 U.S. at 933 n. 80, 102 S.Ct. 3409). However, "[t]he Supreme Court has held that, consonant with the First Amendment, government may engage in some conduct that incidentally inhibits protected forms of association." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir.1996) (citations omitted). Thus, "[t]o be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.'" *Id.* (citations omitted).

Associational rights could not be more directly affected than they are by the Adam Walsh Amendments: a person accused of certain crimes is categorically prohibited from any contact with a class of individuals.[5] This is not the kind of incidental impact that courts have found to be insufficient to implicate the First Amendment. *See, e.g., Lyng v. United Auto. Workers*, 485 U.S. 360, 365–66, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (finding refusal to provide food stamps to striking workers not violation of associational rights); *Connecticut State Federation of Teachers v. Board of Education Members*, 538 F.2d 471, 481 (2d Cir.1976) (holding that state

---

5. It is worth noting that this class is not limited to victims or potential victims of the charged offense. By the strict terms of the Adam Walsh Amendments, a defendant could

be barred from contact with any family member who happened to be a witness to his receipt of child pornography.

did not violate association rights by denying teachers' union access to school mailboxes, bulletin boards, and meeting rooms). Indeed, in the one case to address associational rights in the context of a bail condition prohibiting the defendant from contact with a class of persons (in that case, convicted felons), the court vacated the condition precisely because it was imposed uniformly and without consideration of whether it was necessary in light of the defendant's individual circumstances. *United States v. Spilotro*, 786 F.2d 808, 815–17 (8th Cir.1986).

■ There is thus a protectible liberty interest at stake. As in the preceding analyses, that interest is substantial; defendants are likely to be erroneously deprived of the First Amendment right of association in the absence of an individualized determination of the need for a no-contact order; the marginal burden of providing the additional due process is minimal; and the Government's interest in protecting witnesses, while plainly significant, is not inconsistent with a particularized determination of the danger posed by the defendant. Accordingly, the Adam Walsh Amendments are facially unconstitutional to the extent that they automatically require the imposition of a no-contact condition, and the Government's request that such a condition be required here is denied.[6]

## C. *Excessive Bail*

The Eighth Amendment to the United States Constitution dictates, in part, that "excessive bail not be required." U.S. Const. amend. VIII. Mr. Arzberger contends that the bail conditions required by

the Adam Walsh Amendments are excessive and therefore unconstitutional.

■ Initially, any facial challenge to the Amendments under the Excessive Bail Clause must be rejected. As noted above, a statute is unconstitutional on its face only if there is no set of circumstances under which it would be valid. *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095. But there are plainly situations in which a defendant, after having had an opportunity to contest the need for the conditions in his specific case, would nevertheless be found to constitute a danger to the community or a risk of flight if not subjected to a curfew, electronic monitoring, a prohibition on possessing firearms, or an order forbidding contact with witnesses. Therefore, it is necessary to consider whether the Adam Walsh Amendments as applied to Mr. Arzberger violate the Eighth Amendment.

This requires an analysis of the meaning of "excessive bail." The Government appears to concede, at least for purposes of the present motion, that the Excessive Bail Clause applies to non-pecuniary conditions of release like those required by the Adam Walsh Amendments, and not merely to money bail. (Gov't Memo. at 29 & n.12). This is a wise concession. In *Salerno*, the Supreme Court considered whether pretrial detention—a non-monetary constraint on liberty—violated the Eighth Amendment. *Id.* at 754, 107 S.Ct. 2095. The Court's analysis would have been entirely unnecessary if the Excessive Bail Clause only applied to economic conditions of bail.

The term "bail," then, is expansive, but the modifier "excessive" must still be defined. In *Crowell*, Judge Foschio found that the Adam Walsh Amendments violated the Excessive Bail Clause because they

---

**6.** The determination that the mandatory imposition of each of the conditions requested by the Government violates procedural due process does not preclude the Government

from renewing its application provided that it is prepared to proffer a basis for requiring any or all of these conditions in Mr. Arzberger's particular circumstances.

were imposed automatically, without consideration of whether they constituted the least onerous conditions necessary to satisfy the legitimate objectives of protecting the public and ensuring the defendant's return to court. 2006 WL 3541736, at *7. He relied in part on the Ninth Circuit's opinion in *United States v. Motamedi,* 767 F.2d 1403 (9th Cir.1985), which he characterized as holding that the Eighth Amendment requires "careful review of pretrial release orders to ensure that [a] person is released under [the] least restrictive conditions." *Crowell,* 2006 WL 3541736, at *7 (citing *Motamedi,* 767 F.2d at 1405). I respectfully disagree both with Judge Foschio's reading of Motamedi and with his ultimate conclusion. The passage in Motamedi upon which Judge Foschio apparently relied states as follows:

> [T]he Bail Reform Act of 1984 ... mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required. The Fifth and Eighth Amendments' prohibitions on deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the *statutory mandate* has been respected.

767 F.2d at 1405 (citations omitted; emphasis supplied). In the view of the Ninth Circuit, then, the "least restrictive conditions" requirement was statutory in origin, not constitutional. And, because it was statutory, Congress had the authority to revoke or modify it.

Indeed, an absolute "least restrictive conditions" requirement would be an anomalous constitutional doctrine. It would mean that the imposition of any unnecessary condition of bail, no matter how minor, would give rise to a constitutional claim. For example, a requirement that a defendant simply sign his name prior to release on his own recognizance could be challenged as a violation of the Excessive Bail Clause unless it could be shown to be necessary to prevent the defendant from fleeing. Judge Chen, then, was generally correct that "[n]either the plain language of the Eighth Amendment itself, nor the case law interpreting the Excessive Bail Clause require that the conditions imposed on a defendant's release will be the 'least restrictive.'" *Gardner,* 523 F.Supp.2d at 1031.

However, if the Excessive Bail Clause has any meaning, it must preclude bail conditions that are (1) more onerous than necessary to satisfy legitimate governmental purposes and (2) result in deprivation of the defendant's liberty. That was the case in *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). There, the Supreme Court identified one purpose of bail: "[t]he right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." *Id.* at 4, 72 S.Ct. 1. The Court went on to articulate the principle that "[b]ail set at a figure higher than the amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." *Id.* at 5, 72 S.Ct. 1 (citation omitted).

In *Stack,* the consequence of setting cash bail at a level that the defendants could not meet was to deprive the defendants of their liberty. Here, there is no reason to believe that Mr. Arzberger could not fulfill the conditions requested by the Government and thus achieve his release pending trial. Nevertheless, the price of his freedom pending trial would be the surrender of his constitutional rights to travel, to bear arms, and to associate freely. Conditioning pretrial release on the relinquishment of constitutionally protected rights in circumstances where the

conditions are not necessary to satisfy legitimate governmental purposes would constitute excessive bail in violation of the Eighth Amendment.[7]

In *Salerno*, the Supreme Court held that "[n]othing in the text of the Bail Clause limits permissible Government considerations solely to questions of flight," 481 U.S. at 754, 107 S.Ct. 2095, but it also recognized the "substantive limitation" that "the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Id.* "Of course, to determine whether the Government's response is excessive, we must compare that response against the interest the Government seeks to protect by means of that response." *Id.* Here, the Government has articulated legitimate goals, including the protection of the public in general and of minors in particular. However, whether the Government's "response"— each condition that it seeks—is necessary or excessive cannot be determined without an individualized determination of Mr. Arzberger's characteristics. Accordingly, a decision on whether the conditions required by the Adam Walsh Amendments violate the Excessive Bail Clause as applied to Mr. Arzberger must await further hearing.

### D. *Separation of Powers*

■ Finally, Mr. Arzberger argues that the Adam Walsh Amendments violate the separation of powers doctrine because they " 'prescribe[ ] a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently, including the consideration of relevant evidence.' " (Def. Memo. at 22 (quoting *Crowell*, 2006 WL 3541736, at *11)). The defendant further contends that the Amendments "usurp[ ] a quintessential judicial function in violation of the Constitution." (Def. Memo. at 23). Neither argument has merit.

The first is based on *Crowell*, where Judge Foschio relied on *United States v. Klein*, 80 U.S. 128, 13 Wall. 128, 20 L.Ed. 519 (1871), which he interpreted as precluding Congress from legislating irrebutable presumptions such as the presumption that someone charged with certain child pornography crimes would constitute a danger to the community if released without the prescribed bail conditions. *Crowell*, 2006 WL 3541736, at *11. *Klein*, however, is not so sweeping. At most, it

---

**7.** Such conditions could also be construed as violating the specific constitutional rights impinged upon. Thus, for example, the court in *United States v. Murtari*, Nos. 5:07–CR–0428, 5:07–CR–406, 5:08–CR–0059, 5:08–CR–0060, 2008 WL 687434 (N.D.N.Y. March 11, 2008), considered whether bail conditions prohibiting the defendant from entering government property (where he wrote on government property in chalk) violated his First Amendment rights. The court found:

> Without question, a defendant who is under court supervision, including based on a conditional pretrial release order, does not necessarily forfeit all of his or her First Amendment rights. Consequently, in fashioning suitable conditions to govern the defendant's release pending trial on the various charges against him in this case, the court was required to do so in a manner which would result in no greater intrusion upon defendant's constitutional rights, including those guaranteed under the First Amendment, than reasonably necessary in order to effectuate the objectives of the Bail Reform Act, and to additionally insure defendant's compliance with the court order.

*Id.* at *4 (citation omitted). A similar analysis applies in the context of sentencing. *See United States v. Myers*, 426 F.3d 117, 126 (2d Cir.2005) ("In short, when a fundamental liberty interest is implicated by a sentencing condition, we must first consider the sentencing goal to which the condition relates, and whether the record establishes its reasonableness. We must then consider whether it represents a greater deprivation of liberty than is necessary to achieve that goal.").

stands for the proposition that Congress cannot dictate a particular decision in a case without repealing or amending the law that underlies the litigation. *See Klein,* 80 U.S. at 146–47. And, once Congress has amended the underlying law, any separation of powers concern evaporates. *See Robertson v. Seattle Audubon Society,* 503 U.S. 429, 436, 441, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). Here, by passing the Adam Walsh Amendments, Congress effected a generally applicable change in the law governing bail and did not merely dictate the outcome of particular litigation contrary to the provisions of existing law.

This leaves the defendant's more ambitious argument that Congress violated the separation of powers by legislating in an area that is the province of the courts. "[W]ithin our political scheme, the separation of governmental powers into three coordinate branches is essential to the preservation of liberty." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Nevertheless, "the Framers did not intend for the three branches to remain autonomous." *United States v. Polizzi,* 549 F.Supp.2d 308, 399 (E.D.N.Y.2008) (citing *Mistretta,* 488 U.S. at 379, 109 S.Ct. 647). Thus, there are numerous areas in which the responsibilities of the branches overlap. For example, although criminal sentencing is a core judicial function, Congress may nevertheless play a substantial role, for example by prescribing mandatory minimum sentences. *See Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (rejecting separation of powers challenge to mandatory minimum sentences); *United States v. Gagliardi,* 506 F.3d 140, 148 (2d Cir.2007) (same). Similarly, the Supreme Court has already determined that Congress may impinge on the traditionally judicial function of bail setting by declaring that defendants who meet certain criteria will not be entitled to bail at all. *See Salerno,* 481 U.S. at 755, 107 S.Ct. 2095 (rejecting due process and excessive bail challenges to detention on basis of danger to community). Thus, the role of the judiciary in setting bail conditions, while primary, is not exclusive. Mr. Arzberger's challenge to the Adam Walsh Amendments based on the separation of powers doctrine therefore fails.

*Conclusion*

The Adam Walsh Amendments are unconstitutional on their face to the extent that they would impose conditions that infringe protected liberty interests without providing the accused with an individualized assessment of the need for such conditions. The Amendments survive a facial challenge under the Eighth Amendment, but no determination can yet be made whether the requested conditions would constitute excessive bail as applied to Mr. Arzberger. Finally, the Adam Walsh Amendments do not violate the separation of powers doctrine. Based on these determinations, the Government's motion to require additional conditions of bail is denied without prejudice to being renewed if the Government can demonstrate the need for any of the requested conditions in light of the defendant's particular circumstances.

SO ORDERED.