**UNITED STATES of America, Plaintiff,**

v.

**Brian Paul COSSEY, Defendant.**

**No. CR 09–09–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

July 27, 2009.

Cyndee L. Peterson, U.S. Attorney's Office, Missoula, MT, for Plaintiff.

John Rhodes, Federal Defenders of Montana, Missoula, MT, for Defendant.

## OPINION AND ORDER

DONALD W. MOLLOY, District Judge.

Section 3142 of Title 18 of the United States Code (part of the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*) prescribes the process for determining the conditions for release of a criminal defendant pending trial. Subsection (a) allows a judicial officer to release the accused on personal recognizance. Subsection (b) of the statute requires the judicial officer to order the pretrial release subject to minimal conditions—that the accused shall not commit a crime and shall provide a DNA sample. If the officer determines that release under subsection (b) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," subsection (c) allows the judicial officer to release the accused subject to "least restrictive further conditions." Subsection (c) enumerates several conditions the pretrial release conditions "may include." 18 U.S.C. § 3142(c)(1)(B)(i)-(xiv). The statute thus provides an outline a judicial officer follows when determining the conditions of pretrial release, giving the officer discretion constrained by the requirement that the accused be released pending trial subject to the least restrictive conditions the judicial officer deems appropriate.

In 2006 Congress enacted the Adam Walsh Child Protection and Safety Act, which amended 18 U.S.C. § 3142 as it pertains to a criminal defendant accused of a sexual offense involving a minor victim or of failing to register as a sex offender. *See* 18 U.S.C. § 3142(c). In such cases, "any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii)" of 18 U.S.C. § 3142(c)(1)(B). *Id.*

Defendant Brian Paul Cossey was indicted on charges of receiving and possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252(a)(5)(B). He was arraigned before Magistrate Judge Jeremiah C. Lynch in March and released pending further proceedings. At the arraignment hearing Judge Lynch imposed the prerelease conditions mandated by the AWA amendments. Cossey moves the Court to declare the Adam Walsh Act amendments to the Bail Reform Act unconstitutional. For the reasons set forth below, the motion is denied.

### I

#### A.

Sections 3142(a) and (b) of Title 18 of the United States Code allow a judicial officer to release on personal recognizance an accused prior to trial, subject to the conditions that the accused not commit a crime during the period of release and cooperate in the collection of a DNA sam-

ple. Subsection (c) covers situations in which the judicial officer determines that release on personal recognizance will not assure the accused's appearance at future proceedings or will endanger the community. The judicial officer must in this situation release the accused subject to "least restrictive further conditions." 18 U.S.C. § 3142(c).

■ The statute allows the judicial officer to find that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," in which case "the judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Such an order may issue, however, only after a hearing at which the accused has the right to be represented by counsel, to present witnesses and cross-examine witnesses, and to present information by proffer or otherwise. 18 U.S.C. § 3142(f). The facts which support a finding pursuant to subsection (e)(1) must be established by clear and convincing evidence. *Id.* Put simply, a judicial officer's finding that an accused must be detained pending trial must be supported by clear and convincing evidence brought out in an adversary hearing that secures the accused's due process rights.

Subsections (e)(2) and (3) require the judicial officer to treat some accused persons differently. Subsection (2) addresses cases where the accused allegedly committed a specific crime (one of several crimes enumerated at subsection (f)(1)(A)-(E)) *and* the judicial officer finds 1) the accused has been previously convicted of an offense listed in subsection (f)(1)(A)-(E); 2) the accused committed the prior offense while on pretrial release; and 3) less than five years have elapsed since either the date of conviction for the prior offense or of the accused's release from prison. In this case, "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of ... the community[.]" 18 U.S.C. § 3142(e)(2). Similarly, subsection (e)(3) creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" for persons accused of crimes enumerated at subsection (e)(3)(E). Among the enumerated crimes is Receipt of Child Pornography. 18 U.S.C. § 3142(e)(3)(E).

Subsection (e) thus replaces, in specific circumstances, the judicial officer's discretion to release an accused pretrial or to order an accused detained with a presumption that no condition or combination of conditions will assure the community's safety, subject to rebuttal by the accused. If the judicial officer determines that the accused has rebutted the presumption that no condition or combination of conditions will protect the public, the judicial officer may release the accused subject to conditions imposed under subsection (c), i.e., that the accused not commit a crime and cooperate in the collection of DNA and other "least restrictive further condition[s]" that will assure the accused's appearance and protect the community. 18 U.S.C. § 3142(c)(1)(A) and (B).[1]

The Adam Walsh Act's amendments, found at the end of subsection (c)(1)(B), change the treatment of persons accused of the crimes enumerated at subsection (e)(3)(E), including Receipt of Child Pornography. If the accused rebuts the presumption subsection (e)(3)(E) creates—

---

1. Another possible scenario is where the accused rebuts the presumption but the government nonetheless presents clear and convincing evidence that the accused should be detained, in which case the judicial officer "shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[,]"—the judicial officer must impose, in fashioning "least restrictive further conditions," electronic monitoring and the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii) of 18 U.S.C. § 3142(c)(1)(B). These conditions require that the defendant 1) abide by specified restrictions on personal associations, place of abode, or travel; 2) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; 3) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency; 4) comply with a specified curfew; 5) refrain from possessing a firearm, destructive device, or other dangerous weapon. Where the person is accused of committing a crime enumerated in subsection (e)(3)(E), and the judicial officer determines that the accused has rebutted the presumption arising under subsection (e)(3) and should not be detained, then the officer may release the person pending trial on conditions that must include, at a minimum, electronic monitoring and the five specific conditions. The statutory mandate is unambiguous.

Cossey is out on pretrial release. In accordance with the procedures just described he was released subject to electronic monitoring and the mandatory conditions of Subsection (c)(1)(B)(iv)-(viii). In his motion and brief he urges the Court to follow several others that have declared the conditions imposed pursuant to the Adam Walsh Act amendments unconstitutional as violative of the Eighth Amendment, the Fifth Amendment, and the Separation of Powers doctrine.

### B.

The parties' arguments address the Eighth Amendment's prohibition against excessive bail, the Fifth Amendment's requirement of due process, and the doctrine of separation of powers. Cossey relies primarily on the Supreme Court opinion in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which rejected due process and excessive bail challenges to the Bail Reform Act, and *United States v. Crowell*, 2006 WL 3541736 (W.D.N.Y.), the first district court opinion to conclude the AWA amendments are unconstitutional. Cossey urges the Court to follow the *Crowell* court and several others that have declared the AWA amendments unconstitutional based in part on principles the Supreme Court articulated and applied in *Salerno*. *See, e.g., United States v. Crowell*, 2006 WL 3541736 (W.D.N.Y.) (holding the AWA amendments unconstitutional as violative of the Excessive Bail Clause, procedural due process, and separation of powers); *United States v. Vujnovich*, 2007 WL 4125901 *2 (D.Kan.) (Magistrate Judge's order incorporating, "in their entirety, the legal conclusions reached by the *Crowell* court."); *United States v. Vujnovich*, 2008 WL 687203 (D.Kan.) (agreeing with magistrate's conclusion but narrowing analysis to mandatory imposition of electronic monitoring as violative of procedural due process); *United States v. Arzberger*, 592 F.Supp.2d 590, 607 (S.D.N.Y.2008) (holding the AWA amendments facially unconstitutional as violative of due process "to the extent that they would impose conditions that infringe protected liberty interests without providing the accused with an individualized assessment of the need for such conditions."); *United States v. Kennedy*, 593 F.Supp.2d 1221 (W.D.Wash.2008) (holding that as applied AWA amendments are unconstitutional as violative of the Excessive Bail Clause, procedural due process, and separation of powers), *vacated*, 09–30054, 327 Fed.Appx. 706, 2009 WL 1220763 (9th Cir. May 6, 2009); *United States v. Torres*, 566 F.Supp.2d 591 (W.D.Tex.2008) (holding

the AWA amendments as applied violative of procedural due process and of the Excessive Bail Clause); *United States v. Rueb,* 612 F.Supp.2d 1068 (D.Neb.2009) (concluding the AWA amendments are facially invalid under the Due Process Clause).

The government counters emphasizing the reasoning in *United States v. Gardner,* 523 F.Supp.2d 1025 (N.D.Cal.2007), in which the court concluded that the *Crowell* court's reasoning did not apply. *Gardner,* 523 F.Supp.2d at 1028. In *Gardner,* the defendant was accused of conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 371, and of sex trafficking of a minor in violation of 18 U.S.C. § 1591. The court rejected the accused's Eighth Amendment challenges to the AWA amendments. Applying the principles announced in *Salerno,* the court concluded the government's interest—protecting children from sexual and other violent crimes—was valid and that the electronic monitoring condition, which "merely change[d] the manner in which [the defendant's] curfew [was] enforced," was not excessive in light of that interest. *Id.* at 1029–31.

The court rejected the defendant's argument that the AWA amendments violated procedural due process by eliminating a particularized finding or an opportunity to be heard on whether the mandatory conditions were necessary. *Id.* at 1031. The court concluded that the defendant "fail[ed] to identify any protectible liberty interest which is deprived by the singular condition of electronic monitoring." *Id.* at 1034. And the court rejected the defendant's separation-of-powers argument, concluding that in enacting the AWA amendment's incremental release conditions, Congress "regulated a field already immersed in legislative prescription" and did not "substantially alter the fundamental function of the court[.]" *Id.* at 1036.

### 1.

Relying on *Salerno* and other courts' application of its interpretation of the Excessive Bail Clause to the AWA amendments, Cossey argues that the mandated conditions of pretrial release in all cases violates the principle that "conditions of release or detention [must] not be 'excessive' in light of the perceived evil." *Salerno,* 481 U.S. at 754, 107 S.Ct. 2095. He argues there is no identifiable interest the amendments address and, even assuming there is such an interest, the mandatory conditions of release are excessive. He seems to offer both facial and as applied challenges, though he makes no clear distinctions in his brief. As to the facial challenge, he asserts the amendments require imposing the conditions "in all cases" and thus violate the Excessive Bail Clause. He argues that (as applied) the mandatory conditions are excessive because some are unnecessary in his case.

The government responds that the amendments serve numerous compelling interests and that Congress's concerns are supported by specific findings. According to the government, the mandatory conditions are designed to protect children from "various related harms." These harms are 1) the effects of child pornography; 2) the "repeat exploitation in child pornography"; 3) the potential sexual abuse and exploitation through creation of pornographic images; and 4) sexual attacks and other violent crimes against children. The government argues that in order for Cossey to prevail on his excessive bail argument he must show that in light of these important interests the mandatory conditions the AWA amendments impose are excessive, and that he fails to do so.

### 2.

The government is right that much of Cossey's excessive bail argument is really a due process argument. Cossey empha-

sizes that in *Salerno* the Bail Reform Act was saved from unconstitutionality because the determination to detain an accused pretrial is made only after "a full-blown adversary hearing," in which "the Government must convince a neutral decisionmaker by clear and convincing evidence" of the need for pretrial detention. *Salerno*, 481 U.S. at 750, 107 S.Ct. 2095. Cossey argues that while the AWA amendments do not mandate detention, the guarantees of due process identified in *Salerno* are nevertheless required. He argues the mandatory conditions "implicate a liberty interest of freedom from government restraint."

The government argues that Cossey has not identified a constitutionally protected liberty interest, and therefore cannot sustain a procedural-due-process claim. *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir.2006) ("[T]he first [question in procedural due process analysis] asks whether there exists a liberty or property interest which has been interfered with by the State."). The government persuasively points to the troubling level of generality at which Cossey states the affected liberty interest—"a liberty interest of freedom from government restraint"—and to the absence of any cited legal authority identifying this interest. The government claims that Cossey exaggerates the effect of the AWA amendment's mandatory conditions, a claim vindicated by evidence of how the conditions are affecting Cossey's daily life. *See* govt. Ex. 1, dkt # 15–7.

The government frames the issue as whether there is any authority for the proposition that Congress can *never* establish mandatory conditions in some classes of cases. Without citing any authority, the government states, "That cannot possibly be the law." Relying on the absence of any specific authority to the contrary, the government claims that so long as Congress justifies the rules it imposes, "it is simply not the case that ... mandatory rules [are] at all constitutionally improper[.]" The government finds the justification for the AWA amendments in studies "link[ing] child pornography offenses with pedophilia," and argues that this link obviates the need for particularized findings regarding appropriate conditions of pretrial release for an individual accused of child pornography crimes.[2] The government also unpersuasively argues, without citing any authority, that the constitutionality of mandatory minimum sentences, a form of post-conviction punishment, indicates the constitutionality of mandatory prerelease conditions in the pretrial context.

Perhaps the strongest argument Cossey offers is that the imposition of the mandatory conditions violates the presumption of innocence in violation of the guarantees of due process. Cossey's brief devotes only a subheading and a handful of sentences to the argument, focusing instead on his argument that due process requires a hearing at which individualized findings are made. The government concedes, if only implicitly, that the AWA amendments ex-

---

**2.** The information on which the government relies does not carry the weight of its argument. For example, in the Statement of Andres E. Hernandez, Director of the Sex Offender Treatment Program for the Federal Correctional Institution, the following appears: "While the 2000 and 2006 analyses reveal similar patterns, they represent heuristic observations and the basis for hypothesis testing which must be followed by rigorous scientific studies. I am hopeful that [BOP] and other researchers will be in a position in the future to provide you with a sound scientific basis for making policy decisions regarding sex offenders[,]" and "... I caution the law enforcement community and others against generalizing beyond the offenders who were the subjects of my treatment interviews."

press an assumption that some persons accused of receiving child pornography, like Cossey, are likely to commit hands-on sexual offenses against children. According to the government this justifies in every case mandatory release conditions that make it easy to monitor and restrict the movements of the accused.

The government's argument contains two unstated assumptions that cut against the presumption of innocence. First, any person accused of committing certain offenses is likely to commit these offenses while on pretrial release. This first broad assumption includes a more specific one that persons accused of crimes enumerated at subsection (e)(3)(E) are more likely to commit these crimes while on pretrial release than persons accused of committing unenumerated crimes are likely to reoffend while on pretrial release.

The second and even more specific assumption is that any person the government accuses of committing a crime enumerated at subsection (e)(3)(E) presents a risk to the community of committing hands-on sexual offenses against children. Were this assumption true in every case, the government would undoubtedly have a legitimate interest in protecting children from such predators, and the Adam Walsh Act's mandatory conditions would reflect a design aimed at securing this interest. The findings the government offers as support for this assumption, however, cannot reasonably be considered an adequate showing that the assumption holds true in every case. *See* note 1, *supra.* The government nevertheless defends the imposition of the mandatory conditions in any case involving charges of a particular category of crimes.

Apparently recognizing the problematic implications of its argument for the principle of the presumption of innocence, the government asserts that "the presumption of innocence applies at trial, not in a pre-trial detention context." The government cites *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), where the Court said,

> The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.

*Bell,* 441 U.S. at 533, 99 S.Ct. 1861. The government ignores, however, what the passage says. *Bell* addressed pretrial detention conditions for detainees who were concededly lawfully detained, had already had hearings pursuant to the Bail Reform Act, and who were challenging conditions of their confinement. Accordingly, the Court assessed whether the challenged conditions amounted to punishment. *See id.* at 534, 99 S.Ct. 1861. Nor does the government account for the context in which the Court in *Bell* addressed the presumption of innocence, i.e., its disagreement with the district and appellate courts' invocations of the presumption in fashioning the "compelling-necessity standard" for evaluating challenges to conditions of pretrial detention. *See id.* at 532, 99 S.Ct. 1861 ("Our fundamental disagreement with the Court of Appeals is that we fail to find a source in the Constitution for its compelling-necessity standard.").

### 3.

Cossey urges the Court to follow the *Crowell* court's reasoning and conclude that the AWA amendments' mandatory conditions unconstitutionally invade the functions of the judiciary. *See Crowell,* 2006 WL 3541736 *11 ("[T]he Adam Walsh Amendments unmistakably and unduly encroach upon the judicial function, exclusively reserved by Article III of the

Constitution to the Judicial Branch, in violation of powers established by the Constitution's framework."). Notably, Cossey relies on cases addressing legislation allowing either the executive or legislative branch to review, revise, or reject a final judicial decision. The government seizes on this weakness on Cossey's argument, pointing out that the case on which the *Crowell* court relied, *United States v. Klein*, 80 U.S. 128, 13 Wall. 128, 20 L.Ed. 519 (1871), "stands only for the very narrow proposition that Congress cannot legislate with the intent of deciding a pending case."

## II

■ Cossey argues for a ruling of unnecessary breadth. The government asks the Court to base its decision on what is arguably dubious, or at least incomplete, legislative findings to justify the imposition of the AWA amendment's mandatory conditions in all cases where a person is accused of receiving child pornography (or another crime enumerated at 18 U.S.C. § 3142(e)(3)(E)). Neither argument is ultimately persuasive and each asks too much of the law.

■ Three principles of interpretation are instructive here. First, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's duty] is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 239, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (citing *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909)); *see also Rust v. Sullivan*, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (identifying the federal courts' "respect for Congress, which we assume legislates in the light of constitutional limitations."). Second, "[it is an] elementary cannon of construction that a statute should not be interpreted so as to render one part inoperative." *See Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), overruled in part on other grounds. Third, "[W]here the construction of a statute would lead to a manifest contradiction of the apparent purpose of the statute, it is to be presumed that some exception or qualification was intended by the legislature." *Export Group v. Reef Industries, Inc.*, 54 F.3d 1466, 1474 (9th Cir.1995) (quoting *Sutherland Statutory Construction* § 47.11 (Supp.1995).)

These principles come into play in light of one feature the parties' arguments share. Neither the government nor Cossey (nor any of the cases on which Cossey relies) address subsection (j) of the Bail Reform Act. Subjection (j) provides, "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." Congress expressly incorporated the principle into the statute as a rule of construction. This easily defeats the government's argument that under *Bell* the presumption of innocence does "not [apply] in a pre-trial detention context" and therefore does not apply here. The plain language of the statute says otherwise. Likewise, the Court need not, as Cossey urges, look to Fifth–Amendment–due–process jurisprudence to find and apply the principle.

The issue here is one of statutory construction. The government defends the AWA amendments' assumptions that persons accused of certain crimes are likely to commit those crimes while on pretrial release, and asserts also that the amendments are justified because persons accused of certain crimes are likely to be sexual predators who prey on children. Cossey argues the AWA amendments require that all persons accused of certain crimes be treated the same. The Court must reconcile, according to the canons of

statutory construction, the conflict between the assumptions the AWA amendments seem to make—assumptions the government argues are justified and Cossey claims are unconstitutional—and the rule of construction provided at subsection (j).

 Subsection (j) is an original provision of the Bail Reform Act enacted in 1966. The purpose of the Bail Reform Act is "to revise the practices relating to bail to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest." The AWA amendments were added to the statute in 2006. *See* Pub.L. 109–248, Title II, § 216, July 27, 2006, 120 Stat. 617. Their purpose is to express a "deep and abiding concern for the health and welfare of the children and youth of the United States" and to "protect and benefit such children." *See* S.Rep. No. 95–438, U.S.Code Cong. & Admin.News 1978, at 40.

The AWA amendments and their purpose are not necessarily at odds with the purpose of the Bail Reform Act, unless the Court accepts what Cossey claims the AWA amendments require and the government's justification for them, i.e., respectively, the mandatory imposition of identical conditions in every case because persons accused of committing certain crimes are going to commit others. This interpretation of the AWA amendments renders subsection (j) inoperative. Because "a statute should not be interpreted so as to render one part inoperative," the Court must reject this interpretation. *See Colautti*, 439 U.S. at 392, 99 S.Ct. 675. Treating every defendant accused of certain crimes as a member of a class every member of which shares identical propensities and presents an identical risk to the community cannot be what the AWA amendments require without eviscerating subsection (j), because such an application of the amendments modifies and limits the presumption of innocence.

It is not difficult to imagine fashioning conditions of release that honor Congress's recognition of the public's "deep and abiding concern for the health and welfare of the children and youth of the United States" and its determination to "protect and benefit such children," without assuming that every person the government accuses of a child pornography crime is a hands on sexual offender who will prey on children while on pretrial release. In a recent unpublished Ninth Circuit memorandum disposition, for example, a panel of circuit judges noted that "many terms of the [Adam] Walsh Act are undefined." *United States v. Kennedy*, 09–30054, 327 Fed.Appx. 706, 708, 2009 WL 1220763 at 2 (9th Cir. May 6, 2009). The panel observed that while the statute requires 1) electronic monitoring; 2) restrictions on personal associations, place of abode, or travel; 3) reporting; and 4) a curfew, the statute does not prescribe how these conditions are to be specified in a particular case. *Id.* at 707–08, at 2–3. Responding to the defendant's claims that the AWA amendments are unconstitutional, the panel said, "[W]e construe the Walsh Act to require the district court to exercise its discretion, to the extent practicable, in applying the mandatory release conditions." *Id.* at 707, at 3.

On remand to the district court the panel noted that "[t]wo of [the] six mandatory conditions are absolute by their own terms—defendant shall have no contact with the alleged victim and potential witnesses and shall refrain from possessing a firearm, destructive device, or other dangerous weapon." *Id.* at 707, at 4 (citing 18 U.S.C. §§ 3142(c)(1)(B)(v), (viii)). With re-

spect to the other four conditions, the panel instructed the district court to:

> [C]onsider all relevant factors, including defendant's job-related needs, to determine the time of day or number of hours in specifying a curfew, or whether the curfew must be connected to a particular address. The district court shall also fashion an appropriate condition of electronic monitoring that would enable defendant to continue his employment.

*Id.* The panel reached its decision in light of the "established principle that a statute should be read to avoid serious constitutional issues," and concluded, "So construed, we see no constitutional infirmity in the Walsh Act on the bases argued by defendant." *Id.* at 707, at 3. So too here.

The recording of the proceedings before Judge Lynch, held on March 31, 2009, show that Judge Lynch, in consultation with Pretrial Services, considered what conditions were necessary for Cossey and imposed them.[3] And, as the government points out, the conditions imposed do not unduly restrict Cossey's movements or interfere with his ability to work. Judge Lynch acknowledged Cossey's challenge to the AWA amendments, said he was going to impose them, and then engaged Cossey in a discussion concerning the potential effect of travel restrictions on Cossey's employment and education. Judge Lych deliberately imposed travel restrictions with Cossey's needs in mind, and stated that if the situation changed Pretrial Services would modify the condition.

In placing restrictions on Cossey's personal associations, Judge Lynch considered it necessary to impose a condition prohibiting Cossey from loitering near locations minors frequent, from having contact with adults who have minor children, and from residing in a home with a minor child. After imposing this condition, he stated that if this condition interfered with Cossey's attending class, Cossey should alèrt Pretrial Services and Judge Lynch would make an exception to the condition.

While Judge Lynch imposed a condition of electronic monitoring, he left the details to the discretion of Pretrial Services. The record shows these details do not unreasonably inhibit Cossey's movements. And, because Cossey is studying toward a degree in information technology, and a complete ban on computer and internet use would interfere with this endeavor, Judge Lynch instructed Cossey and Pretrial Services work out a reasonable accommodation in light of the demands of Cossey's classes. Finally, after learning that Cossey uses Skype to communicate long distance with his girlfriend, Judge Lynch ordered Pretrial Services to work with Cossey to allow him to continue using this mode of communication.

The hearing reflects that Judge Lynch did not impose the AWA amendments as a blanket prescription without making an individualized determination. It reflects the contrary. Consistent with the Ninth Circuit panel's reasoning in *Kennedy* and with subsection (j), Judge Lynch exercised his discretion, "to the extent practicable, in applying the mandatory release conditions." The record shows that Judge Lynch, in consultation with Pretrial Services, "consider[ed] all relevant factors, including defendant's job-related needs, to determine the time of day or number of hours in specifying a curfew." *Kennedy,* 09–30054, 327 Fed.Appx. at 708, at 4. And he "fashion[ed] an appropriate condition of

---

**3.** When Judge Lynch asked the government regarding its position with respect to conditions of pretrial release, the government responded, "Your Honor, we are … requesting that the Court impose *all of the conditions recommended by Pretrial Services,* including the Adam Walsh conditions." (Emphasis added.)

electronic monitoring that would enable [Cossey] to continue his employment." *Id.*

This application of the AWA amendments does not "modify or limit the presumption of innocence" in violation of the rule of construction set forth at subsection (j) of the Bail Reform Act. And it is consistent with what Cossey argues the Eighth Amendment, the Fifth Amendment, and the Separation of Powers require: an individualized assessment in determining appropriate pretrial release conditions. Cossey's as applied challenge fails because what he claims the AWA amendments require in every case, thus rendering them unconstitutional as applied to him, did not happen here.

■ Cossey's facial challenge must also fail. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. As both the panel's reasoning in *Kennedy* and the record here illustrate, there are circumstances under which the AWA amendments may be applied constitutionally. This requires interpreting the AWA amendments as allowing a judicial officer broad discretion to fashion conditions of pretrial release on an individualized basis within the framework the AWA amendments provide. The Bail Reform Act is still an outline a judicial officer follows when determining the conditions of pretrial release, giving the officer discretion constrained by the requirement that the accused be released pending trial subject to the least restrictive appropriate conditions. The Act is not rendered unconstitutional because Congress deemed it appropriate to direct a judicial officer's attention to specific conditions when determining prerelease conditions in certain cases.

Cossey's facial challenge thus fails because here, his understanding of what the AWA amendments require is not reconcilable with subsection (j) of the Bail Reform Act. Because his interpretation of the AWA amendments would render either them or subsection (j) inoperative, and this Court is bound by the "elementary cannon of construction that a statute should not be interpreted so as to render one part inoperative," the Court must decline to accept Cossey's reading of what the statute facially requires. *See Colautti,* 439 U.S. at 392, 99 S.Ct. 675 (1979).

### III

No doubt the substance of subsection (j), which internalizes into the statute the principle of the presumption of innocence, reflects a fundamental purpose of the Act. "[W]here the construction of a statute would lead to a manifest contradiction of the apparent purpose of the statute, it is to be presumed that some exception or qualification was intended by the legislature." *Export Group,* 54 F.3d at 1474. As discussed above, the conditions Judge Lynch imposed in this case, like the panel's decision in *Kennedy,* exemplify just such a qualification to what Cossey and the government argue the AWA amendments require.

The legal theories Cossey offers and the arguments the government makes assume an interpretation of the AWA amendments the Court must reject in light of the Bail Reform Act's own provisions, in particular subsection (j). Construed according to the canons of statutory construction, the Bail Reform Act cannot require what either Cossey or the government argues it does. Moreover, in light of the record, Cossey's legal theories do not apply to the facts of his own case.

Accordingly,

IT IS HEREBY ORDERED that Cossey's Motion to Declare the Adam Walsh Act's Mandatory Conditions of Release Unconstitutional (dkt # 6) is DENIED. The AWA amendments require a judicial officer to exercise discretion, to the extent practicable, in applying prerelease conditions according to the outline the AWA amendments provide. Because the record shows this is what Magistrate Judge Lynch did, there is no constitutional violation here.

The Court will await the government's response brief before ruling on Cossey's Motion to Strike.[4]

4. While Cossey's constitutional challenge to the AWA Amendments was pending, he filed a Motion to Strike the AWA's Mandatory Release Conditions Based on the Particular Circumstances of this Case. *See* dkt # 22. In the Motion to Strike he asks the Court to lift the AWA mandatory conditions as a remedy for the Court's failure to promptly decide the constitutional challenge. *See* 18 U.S.C. § 3145(a) (a person ordered released may challenge the conditions of release and such motion "shall be determined promptly."). In the second motion Cossey ironically suggests the remedy for the Court's shortcoming is the relief he seeks through the first. In other words, Cossey implicitly suggests that if the Court is not inclined to grant him relief by declaring the mandatory conditions unconstitutional, it should grant the same relief from the mandatory conditions as a remedy for failing to decide the motion soon enough.